UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| GENE L., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 2:20-cv-00152-cr |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE
COMMISSIONER, DENYING THE COMMISSIONER'S MOTION TO AFFIRM,
AND REMANDING FOR FURTHER PROCEEDINGS**
(Docs. 12 & 13)

Plaintiff Gene Allen Lumbra, Jr. ("Plaintiff") is a claimant for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments under the Social Security Act ("SSA") and brings this action pursuant to 42 U.S.C. § 405(g) to reverse the decision of the Social Security Commissioner (the "Commissioner") that he is not disabled.[1] (Doc. 12.) The Commissioner moves to affirm. (Doc. 13.) Plaintiff replied on September 13, 2021, at which time the court took the pending motions under advisement.

After his applications for DIB and SSI were denied initially and on reconsideration by the Social Security Administration, Administrative Law Judge ("ALJ") Matthew Levin found Plaintiff was ineligible for benefits based on his conclusion that Plaintiff can

---

[1] Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant's "physical or mental impairment or impairments" must be "of such severity" that the claimant is not only unable to do any previous work but cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

perform jobs that exist in significant numbers in the national economy and was therefore not disabled between the alleged onset date of March 1, 2018 through December 27, 2019, the date of his decision.

Plaintiff identifies four errors in the disability determination: (1) the ALJ failed to fulfill his threshold duty to develop the record; (2) the Appeals Council failed to explain why there was not a reasonable probability that the new evidence submitted to it would change the outcome of the decision; (3) the ALJ's residual functional capacity assessment was not based on substantial evidence; and (4) the ALJ erred in finding Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not fully supported. Plaintiff seeks a decision placing him "in pay status[,]" or, in the alternative, reversal and remand for another hearing before a different ALJ. (Doc. 12 at 12.)

Plaintiff is represented by Judith Brownlow, Esq. Special Assistant United States Attorney Molly E. Carter represents the Commissioner.

I.      **Procedural History.**

Plaintiff filed his initial applications for DIB and SSI on April 16, 2018, alleging a disability onset date of March 1, 2018. He alleges the following disabling conditions: chronic obstructive pulmonary disease ("COPD"), asthma, anxiety disorder, obesity, hypertension, chronic liver disease, obstructive sleep apnea, attention deficit hyperactivity disorder ("ADHD"), depression, and post-traumatic stress disorder ("PTSD"). His claim was denied on September 11, 2018 and was denied upon reconsideration on May 13, 2019. Plaintiff filed a request for a hearing, which was held before ALJ Levin via videoconference on December 5, 2019. Plaintiff appeared and was represented by counsel. Vocational Expert ("VE") Jack Thomas also appeared and testified at the hearing.

On December 27, 2019, ALJ Levin issued an unfavorable decision. Plaintiff timely filed an administrative appeal. The Appeals Council denied review on August 7, 2020. As a result, the ALJ's disability determination stands as the Commissioner's final decision.

## II. ALJ Levin's December 27, 2019 Decision.

In order to receive DIB or SSI under the SSA, a claimant must be disabled on or before the claimant's date last insured. A five-step, sequential-evaluation framework determines whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).

"The claimant has the general burden of proving that he or she has a disability within the meaning of the Act, and bears the burden of proving his or her case at [S]teps [O]ne through [F]our of the sequential five-step framework established in the SSA regulations[.]" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal quotation marks and citation omitted). At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *McIntyre*, 758 F.3d at 150 (alterations in original) (internal quotation marks omitted).

At Step One, ALJ Levin found Plaintiff had not engaged in substantial gainful activity since March 1, 2018, the alleged onset date. At Step Two, he concluded Plaintiff had the following severe impairments: COPD, asthma, anxiety disorder, and obesity. Although the ALJ noted that Plaintiff was assessed with hypertension, chronic liver disease, obstructive sleep apnea, and ADHD, the ALJ found there was insufficient evidence in the medical record to determine that these impairments caused more than minimal limitations to Plaintiff's ability to perform basic work activities.

At Step Three, ALJ Levin found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the

Listings. Plaintiff testified that he used an oxygen tank during the day and a CPAP machine at night. He complained of persistent breathing problems. The ALJ considered Listing 3.02 to evaluate Plaintiff's COPD but found that the record did not reveal Plaintiff had "the required FEV1 level, FVC level, DLCO measurements, arterial PaO2, PaCO2, [or] SpO2 levels required to meet sections A, B, C or D of this [L]isting." (AR 13.) The ALJ also noted Plaintiff did not have exacerbations or complications requiring three hospitalizations in a twelve-month period at least thirty days apart, as required to satisfy section D of the Listing, although he was hospitalized on November 13, 2017 and from July 1, 2018 to July 3, 2018 for exacerbations of bronchitis. The ALJ noted that an April 30, 2019 pulmonary function test revealed severe obstruction that was significantly improved with bronchodilators. On January 22, 2019, Dr. Lange, Plaintiff's treating physician, noted Plaintiff's shortness of breath was inadequately controlled on his current medications.

In terms of Plaintiff's asthma, the ALJ found that Plaintiff did not have "the FEV1 level required to meet section A of [Listing 3.03]" or have exacerbations or complications requiring three hospitalizations in a twelve-month period at least thirty days apart, as required to satisfy section B of the Listing. *Id.* The ALJ characterized Plaintiff's obesity as severe, with a body mass index ("BMI") of 36.6 and as high as 39.17 but determined "the medical signs and laboratory findings of his obesity, alone or in combination with any other impairment, are not of such severity as found in any [L]isting." *Id.* at 14.

With regard to Plaintiff's mental health conditions, the ALJ found that Plaintiff had moderate limitations in understanding, remembering, or applying information; moderate limitations in concentrating, persisting, or maintaining pace; mild limitations in interacting with others; and mild limitations in adapting or managing himself. The ALJ found that Plaintiff's mental impairments did not meet or medically equal the criteria of Listings 12.02, 12.06, or 12.11.

At Step Four, ALJ Levin determined Plaintiff had the residual functional capacity ("RFC") to:

4

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant should avoid even moderate exposure to dust, gas, odors, fumes[,] and poor ventilation. The claimant can understand and remember 1-2 step instructions over 2 hour increments throughout an 8-hour workday and a 40-hour workweek.

*Id.* at 15.

In light of Plaintiff's RFC, the ALJ concluded Plaintiff could not perform his past relevant work as a janitor or industrial truck operator as described and as performed generally in the economy. He noted that Plaintiff was thirty-six years old on the date the application was filed, placing him in the "younger individual age 18-49" category as defined by the regulations, and that Plaintiff had "a limited education" and was able to communicate in English. *Id.* at 19.

Considering Plaintiff's age, education, work experience, and RFC, ALJ Levin determined at Step Five that jobs exist in significant numbers in the national economy which Plaintiff could perform, including marker, router, and advertising material distributor. As a result, the ALJ concluded Plaintiff was not disabled from March 1, 2018, through December 27, 2019, the date of the Commissioner's final decision.

### III. Conclusions of Law and Analysis.

#### A. Standard of Review.

In reviewing the Commissioner's decision, the court "conduct[s] a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Cichocki v. Astrue*, 729 F.3d 172, 175-76 (2d Cir. 2013) (citation and internal quotation marks omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks omitted).

It is the Commissioner who resolves evidentiary conflicts and determines credibility issues, and the court "should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *see also Aponte v.*

*Sec'y, Dep't of Health & Hum. Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984) (noting "genuine conflicts in the medical evidence are for the Secretary to resolve"). Even if the court could draw different conclusions after an independent review of the record, the court must uphold the Commissioner's decision when it is supported by substantial evidence and when the proper legal principles have been applied. *See* 42 U.S.C. § 405(g); *McIntyre*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

## B. Whether the ALJ Failed to Develop the Administrative Record.

Plaintiff asserts that ALJ Levin failed to fulfill his threshold duty of developing the administrative record, which "contained no medical opinions from any treating sources[.]" (Doc. 12 at 3.) He further contends that the medical records reviewed by the ALJ "do not shed light on [his] residual functional capacity and the consulting doctors did not personally examine him." *Id.* at 4.

Plaintiff notes ALJ Levin's acknowledgment that:

> The undersigned also does not find the claimant's allegations of disability to be fully consistent with the medical evidence of the record **because there were no medical opinions in the record from any treating sources** who opined that the claimant had any physical or mental exertional or non-exertional limitations that corroborate the claimant's testimony mentioned above. **The record does not contain any opinions from any treating sources** who opine any physical or mental limitations for the claimant due to his impairments. Because the **record lacks corroborating opinions** that support the claimant's allegations of his exertional and non-exertional limitations that are caused by his impairments, the undersigned does not find the claimant's statements to be fully consistent with the medical evidence of the record.

(AR 19) (emphasis supplied).

"It is the rule in our circuit that the . . . ALJ, unlike a judge in a trial, must on behalf of all claimants affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (internal quotation marks and alterations omitted); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (observing that an ALJ has an obligation to develop the record because "of the non-adversarial nature of . . . benefits

6

proceedings"); *Echevarria v. Sec'y of Health & Hum. Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (noting that "the ALJ, unlike a judge in a trial, must . . . affirmatively develop the record"). "This duty exists even when the claimant is represented by counsel[.]" *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).

An ALJ also has a duty to resolve "gaps in the administrative record[.]" *Hankerson v. Harris*, 636 F.2d 893, 897 (2d Cir. 1980) (quoting *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). "However, 'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Guillen v. Berryhill*, 697 Fed. App'x. 107, 108 (2d Cir. 2017) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999)). "An ALJ's failure to develop the record warrants remand." *Id.* (citation omitted).

Plaintiff contends that the ALJ should have contacted Dr. Lange, his primary care physician, to provide an opinion regarding Plaintiff's ability to work despite his COPD, asthma, and other physical impairments and should have contacted Mr. Greenleaf, APRN, his treating psychotherapist, to obtain a functional assessment of Plaintiff's mental capacity to work. The Commissioner responds that the record before the ALJ was properly developed notwithstanding the lack of medical opinions from any of Plaintiff's treating sources because it includes evidence of his treatment for breathing impairments with Drs. Lange and LoPresti; his emergency treatment related to those impairments; the results of pulmonary function tests; evidence of his psychiatric treatment with Mr. Greenleaf; and the assessment of Drs. Abramson and Atkins, state agency consultants who reviewed the medical evidence and rendered opinions based thereon.

While the ALJ's cited "medical records discuss [plaintiff's] illnesses and suggest treatment for them, [those records] offer no insight into how h[is] impairments affect or do not affect h[is] ability to work, or h[is] ability to undertake h[is] activities of everyday life." *Guillen*, 697 Fed. App'x. at 109. For example, while the medical records demonstrate that Plaintiff was being treated for breathing impairments, they do not clarify the physical limitations that may result from these impairments, such as Plaintiff's

7

claimed inability to walk more than short distances and his need to sit down to catch his breath. The ALJ recognized that Plaintiff's COPD was severe and he was obese but imposed virtually no exertional limitations.

In terms of Plaintiff's mental impairments, while Mr. Greenleaf's treatment notes state that the "majority of [an] appointment was spent in psychotherapy discussing coping with [Plaintiff's] learning problems[,]" there was no accompanying assessment of how these problems may alter Plaintiff's ability to work. (AR 455, 686, 693.) Similarly, Mr. Greenleaf's treatment notation that Plaintiff "has ongoing chronic anxiety with exacerbations of anxiety associated with being around people and in open spaces" was not accompanied by an assessment of the potential impact of this condition on Plaintiff's ability to work. *Id.* at 454.[2]

In light of these gaps in the administrative record, ALJ Levin's conclusion "there were no medical opinions in the record from any treating sources who opined that the claimant had any physical or mental exertional or non-exertional limitations that corroborate the claimant's testimony[,]" *id.* at 19, cannot be upheld. *Guillen v. Berryhill* is instructive. There, the Second Circuit noted that an ALJ erroneously relied on the absence of medical records explaining how plaintiff's impairments altered her ability to work to support a conclusion that "no physician has opined that the claimant is disabled." *Guillen*, 697 Fed. App'x. at 109 (internal quotation marks omitted). It therefore held that a remand for failure to develop the record was required because "the medical records obtained by the ALJ d[id] not shed any light on [plaintiff's] residual functional capacity, and the consulting doctors did not personally evaluate [plaintiff]." *Id.* at 108-09.

---

[2] The Commissioner cites *Zell v. Comm'r of Soc. Sec.* for the proposition that because this comment was included in the History of Present Illness section of Plaintiff's treatment notes, it represents Plaintiff's subjective report rather than a medical assessment. *See Zell v. Comm'r of Soc. Sec.*, 2019 WL 5387454, at *3 (E.D.N.Y Oct. 22, 2019). *Zell* is distinguishable because in that case plaintiff used the word "feels" to describe her subjective willingness to obtain employment. *Id.* Mr. Greenleaf's notation that Plaintiff has "ongoing chronic anxiety with exacerbations of anxiety associated with being around people and in open spaces" is not framed as a subjective self-report. (AR 454.)

8

In this case, ALJ Levin found Plaintiff can "perform a full range of work at all exertional levels" and imposed "nonexertional limitations" limited to avoidance of "even moderate exposure to dust, gas, odors, fumes[,] and poor ventilation." (AR 15.) He further determined that "[t]he claimant can understand and remember 1-2 step instructions over 2 hour increments throughout an 8-hour workday and a 40-hour workweek." *Id.* This RFC appears to be derived exclusively from a non-examining physician's conclusion that Plaintiff should "[a]void even moderate exposure" to "[f]umes, odors, dusts, gases, poor ventilation, etc.[,]" *id.* at 169 (Dr. Abramson), and a non-examining physician's opinion that Plaintiff has the ability to "understand and remember simple 1-2 step instructions" and should be "able to concentrate on and perform simple tasks over 2 hour[] periods for the length of a normal [workweek][,]" *id.* at 170-71 (Dr. Atkins).

As in *Guillen*, "the consulting doctors did not personally evaluate [Plaintiff]" before reaching their conclusions regarding his limitations. *Guillen*, 697 Fed. App'x. at 108-09; *see also Albritton v. Comm'r of Soc. Sec.*, 2021 WL 1176147, at *5 (E.D.N.Y. Mar. 28, 2021) (noting that additional development of the record was necessary where the ALJ's finding "appear[ed] to be based on the opinions of consultative physicians . . . who reviewed [p]laintiff's record but did not examine her"). Nor did they rely on any treating opinions in the record. Following *Guillen,* courts in the Second Circuit have found that "opinions by non-examining consultants cannot fill the gap created by the absence of treating physician opinions when the medical records 'do[ ] not provide a sufficient basis' to determine a claimant's RFC." *Collazo v. Saul*, 2020 WL 7021680, at *7 (D. Conn. Nov. 30, 2020) (first alteration in original) (determining that an ALJ erred in according "great weight" to the opinions of non-examining state agency physicians where the "underlying medical records did not 'shed any light' on the [p]laintiff's functional and work-related limitations") (internal quotation marks and citation omitted).

The Commissioner contends that Plaintiff's reliance on *Guillen* is misplaced because "[u]nder [the new] regulations, the ALJ was not [required] to defer to an opinion from a treating source." (Doc. 13 at 8.) For claims filed on or after March 27, 2017, an

9

ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *accord Winston v. Berryhill*, 755 F. App'x. 395, 402 n.4 (5th Cir. 2018) (per curiam). The revised regulations state that "the most important factors [an ALJ] consider[s]" when determining persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(b)(2). Although an ALJ need not *defer* to the opinions of a claimant's treating sources under the new regulations, the new regulations do not lessen an ALJ's duty to develop the record.

"Civil actions seeking to overturn the Commissioner's decision . . . filed on or after March 27, 2017, have only recently begun to be addressed in the district courts." *Angelica M. v. Saul*, 2021 WL 2947679, at *6 (D. Conn. July 14, 2021). As a result, "the Second Circuit has not yet had the opportunity to squarely address the impact the new regulations have on the medical source statement and substantial evidence jurisprudence[.]" *Id.* As one court explained:

> [T]he [*Tankisi*] court viewed medical source statements as an important – though not always necessary – tool for developing the record, independent of the weight the ALJ was required to afford them. It follows that under the new regulations, the *Tankisi* rule would remain in effect: remand for failure to develop the record by obtaining a particular medical source statement depends on the circumstances of the case and will only be required if the record does not otherwise "contain[ ] sufficient evidence from which an ALJ can assess the petitioner's [RFC]."

*Id.* (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed. App'x. 29, 34 (2d Cir. 2013)).

In *Tankisi*, the Second Circuit found that even though the record did not include formal opinions regarding the plaintiff's RFC from her treating physicians, because a treating provider assessed her limitations and because there was a "voluminous medical record assembled by the claimant's counsel that was adequate to permit an informed finding by the ALJ," the court determined it would be improper to "remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity." *Tankisi*, 521 Fed. App'x. at 34 (citations omitted). Unlike in *Tankisi*, the administrative record here contains no assessment of Plaintiff's limitations from any

treating sources, and the consulting physicians did not examine Plaintiff or rely on assessments of functional limitations in the record.[3] *See Angelica M.*, 2021 WL 2947679, at *7-8 (finding under new regulations that gaps regarding plaintiff's ability to work required a remand despite ALJ's access to opinions from state agency consultants and other sources).

Significant gaps exist in the record, particularly in terms of how Plaintiff's physical and mental impairments impact his ability to work. "[C]ourts have held that where, as here, psychiatric impairments are at issue, an ALJ has a heightened duty to develop the record due to the difficulties associated with evaluating a mental illness's impact on a claimant's ability to function adequately in a workplace." *Rodriguez v. Comm'r of Soc. Sec.*, 2021 WL 4200872, at *21 (S.D.N.Y. Aug. 19, 2021) (collecting cases). As the ALJ did not adequately develop the administrative record with regard to Plaintiff's impairments, Plaintiff's motion to reverse must be GRANTED.

### C. Whether New Evidence Submitted to the Appeals Council Warrants Remand.

Even if the record before ALJ Levin had been adequately developed, remand is required based on the additional evidence that Plaintiff submitted to the Appeals Council. "[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez*, 77 F.3d at 45. "Once evidence is added to the record, the Appeals Council must then consider the entire record, including the new evidence, and review a case if the 'administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Lesterhuis v.*

---

[3] For example, ALJ Levin noted that Dr. Goldberg, a physician originally hired by the state agency, reviewed the record in September 2018 "and opined that there was insufficient evidence to rate the claimant's mental impairments" (AR 17) (citations omitted). Dr. Atkins later reviewed the record on May 2, 2019, including Mr. Greenleaf's treatment notes; however, those notes were substantially similar to the ones deemed insufficient for purposes of assessing Plaintiff's impairments. *See Kellner v. Kijakazi*, 2021 WL 4554670, at *5 (W.D. Okla. Oct. 5, 2021) (finding under the new regulations that the ALJ "relied heavily upon the [s]tate agency consultant's opinion" which was "based on insufficient evidence").

*Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (per curiam) (quoting 20 C.F.R. § 404.970(b)). "When the Appeals Council denies review after considering new evidence, [the court] simply review[s] the entire administrative record, which includes the new evidence, and determine[s], as in every case, whether there is substantial evidence to support the decision of the [Commissioner]." *Perez*, 77 F.3d at 46.

Correspondingly, when the Appeals Council denies a request for review, "the ALJ's decision, and not the Appeals Council's, is the final agency decision." *Lesterhuis*, 805 F.3d at 87. The remaining issue is "whether the new evidence altered the weight of the evidence before the ALJ so dramatically as to require" remand. *Canady v. Comm'r of Soc. Sec.*, 2017 WL 5496071, at *11 (N.D.N.Y. Oct. 4, 2017).

Plaintiff submitted a Mental Impairment Questionnaire completed by Mr. Greenleaf to the Appeals Council that had not been considered by the ALJ. It states that while Plaintiff "reports severe anxiety in social/work situations[,]" Mr. Greenleaf "ha[d] not observed [Plaintiff] with these [impairments]." (AR 48.) There is, however, no evidence that Mr. Greenleaf had the opportunity to evaluate Plaintiff in a social or workplace setting. Mr. Greenleaf explained that Plaintiff "has long-term significant learning difficulties which are complicated by increased anxiety when he falls behind[.]" *Id.* at 53. Based on these limitations, he opined that Plaintiff would be absent from work approximately four days per month. *See Beck v. Colvin*, 2013 WL 5533571, at *6 (W.D.N.Y. Oct. 7, 2013) ("Vocational experts in Social Security cases have testified that missing three or more days of work per month renders a claimant unemployable, as that level of absenteeism is beyond the bounds of reasonable employer tolerance.") (citation omitted).

Plaintiff also submitted a Pulmonary Medical Source Statement from Dr. Lange to the Appeals Council that was not considered by the ALJ. It noted that Plaintiff has asthma attacks "[d]aily" which incapacitate him on average for thirty to sixty minutes. (AR 41.) Dr. Lange opined that Plaintiff was not capable of walking more than one city block, could not sit at one time for more than fifteen minutes before needing to get up, and could stand for only ten minutes in duration. He concluded that, in addition to normal

12

breaks every two hours, Plaintiff would require daily unscheduled breaks during the working day for thirty to sixty minutes each and that Plaintiff would likely be absent from work more than four days per month as a result of his physical impairments. *Id.* at 43-44.

Mr. Greenleaf's opinion that Plaintiff's mental impairments would necessitate his absence from work approximately four days per month and Dr. Lange's opinion regarding the severity of Plaintiff's asthma attacks, his missed days of work, and overall mobility are inconsistent with ALJ Levin's RFC determination that Plaintiff can "perform a full range of work at all exertional levels[,] *id.* at 15, and further underscore the necessity of a remand. *See Lesterhuis*, 805 F.3d at 88 (holding remand was appropriate where "the ALJ's decision was not supported by substantial evidence because the new evidence contradicted the ALJ's conclusion in important respects"); *see also Devra B. B. v. Comm'r of Soc. Sec.*, 2021 WL 4168529, at *7-8 (N.D.N.Y. Sept. 14, 2021) (finding under new regulations that remand was required due to the reasonable probability that additional opinions from plaintiff's treating providers would change the outcome of the ALJ's decision). As new evidence submitted to the Appeals Council alters the weight of the evidence so dramatically as to require remand, Plaintiff's motion to reverse is GRANTED on this ground as well.

D. **Transfer to New ALJ.**

Plaintiff requests that a different ALJ be assigned on remand. In this case, the ALJ has not manifested a lack of fairness or personal hostility to the Plaintiff. *See Johnson v. Astrue*, 2011 WL 2938074, at *2 (D. Conn. Feb. 15, 2011) (ruling that "when the conduct of an ALJ gives rise to serious concerns about the fundamental fairness of the disability review process, remand to a new ALJ is appropriate"); *see also Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 293 (E.D.N.Y. 2004) (observing that remand to different ALJ is justified where ALJ exhibited "personal hostility" towards plaintiff). The court therefore "takes no position on which ALJ the case should be assigned to upon remand as that decision rests with the Commissioner." *Johnson*, 2011 WL 2938074, at *3.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to reverse the decision of the Commissioner (Doc. 12) is GRANTED, the Commissioner's motion to affirm (Doc. 13) is DENIED, and the case is REMANDED for proceedings consistent with this Opinion and Order.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 20th day of January, 2022.

Christina Reiss, District Judge
United States District Court